Peek *vs.* Bowden.

JAMES H. PEEK, plaintiff in error, *vs.* ELLIOT C. BOWDEN, defendant in error.

Assuming that the relief act of 1868 is a valid, constitutional law, in order to entitle a defendant, under the provisions thereof, to scale a judgment against him, his motion must state the special and particular damage to which he has been subjected by the act of the plaintiff. The general statement that he has been damaged far beyond the amount of the debt now due is insufficient.

Relief act of 1868.    Before Judge BARTLETT.    Greene Superior Court.    March Adjourned Term, 1874.

For the facts of this case, see the decision.

REESE & REESE, for plaintiff in error.

M. W. LEWIS & SON; J. A. BILLUPS, for defendant.

WARNER, Chief Justice.

This was a motion made in the court below by the defendant, Peek, to have several judgments which had been obtained against him in favor of the plaintiff in a justice's court, submitted to a jury under the provisions of the second section of the act of 1868, for the purpose of having the amount thereof reduced according to the principles of equity, as the jury might determine by their verdict, on the following statement of facts, as set forth in the defendant's motion, to-wit: The plaintiff, as the administrator of Luckie, on the first Tuesday in November, 1860, sold a tract of land as the property of his intestate on a credit of one and two years, with small notes and security. The defendant, Peek, became the purchaser of the land at the price of $10,000 00, and gave his notes therefor, in compliance with the terms of the sale. When the first notes fell due, in 1861, defendant went to plaintiff and told him he wanted to pay the money then due, and did pay him twenty odd hundred dollars. In the latter part of the year 1862, defendant paid plaintiff $500 00 more, making in all paid up to that time, $3,200 00. Soon

Peek vs. Bowden.

after Confederate money became the circulating medium of the country, defendant went to plaintiff and proposed to pay him the whole amount due for the land, when plaintiff told him he would take Confederate money if the guardian of the children would take it from him. Defendant then went and saw the guardian, who agreed to take the money, of which he gave plaintiff notice, who said, "All right." Defendant then went to work to raise the money; sold a lot of cotton, some cattle, and received from his father $3,000 00, and collected from persons who were indebted to him for land, other money, making in all enough to discharge defendant's indebtedness to the plaintiff as administrator. Defendant having thus raised the money in a short time after plaintiff had agreed to take it, saw him and told him he was ready to pay off all he owed him. Plaintiff said he could not take it then, for that the guardian would not take it, which statement of plaintiff defendant is advised and believes was not true; that said guardian never did refuse to take the money. Defendant is informed and believes that plaintiff, between the time he agreed to take Confederate money and the time defendant got enough of it to pay him, plaintiff, out of his own money, (there being no such money on hand belonging to the estate,) did pay to said guardian a large amount of money. After the war, in the fall of 1865, defendant having advertised a sale of his property, intending to move away, plaintiff came to him and said he wanted a settlement. Defendant told him he would be ready as soon as his sale was over. When defendant's sale was over, he went to plaintiff and told him he was ready for a settlement. Plaintiff came to defendant's house, when he told plaintiff he would pay him in greenbacks, or in gold, at the premium, which plaintiff refused, saying he would take nothing but gold, dollar for dollar. Defendant, after this and on the same day, by his agent, offered plaintiff $5,500 00 for $5,000 00, which he refused, saying that he would take nothing but gold in payment of the notes, dollar for dollar. Defendant being anxious to go away, proposed to plaintiff to give back the land for which the notes were given and lose

the $3,200 00 which had been paid, which he refused to do. Shortly after this, defendant went to plaintiff's house and tendered him, in presence of witnesses, the full amount due on the balance of said notes, in "legal tender greenbacks," which plaintiff at first refused to receive, but afterwards, by the influence of others, he was induced and did take $6,000 00. By reason of all of said conduct of plaintiff touching said notes, defendant alleges that he has been greatly deceived and damaged, far beyond the amount now due upon said notes. To this motion of the defendant the plaintiff demurred, which demurrer was sustained by the court, and the defendant excepted.

Assuming that the relief act of 1868 is a valid, constitutional law, (which, in my individual opinion, it is not, as to contracts made before its passage,) still, we are all of the opinion that the defendant did not, by the facts recited in his motion, make such a case as would entitle him to any equitable relief against the plaintiff's judgments, under the provisions of that act. The defendant has got the land for which the debt was contracted, and although he alleges that he has been greatly deceived and damaged by the conduct of the plaintiff, far beyond the amount of the debt now due, he does not state any special or particular damage he has sustained, or in what that damage consisted. So far as it appears from the defendant's allegations, the land may now be worth all he has paid for it, taking into consideration the actual value of the Confederate money in which the $3,200 00 was paid by the defendant to the plaintiff for the land. We find no error in sustaining the demurrer to the defendant's motion, on the statement of facts disclosed in the record.

Let the judgment of the court below be affirmed.